UNITED STATES of America

v.

**Jane KEMBER and Morris Budlong.**

**Crim. No. 78–401.**

United States District Court,
District of Columbia.

May 7, 1980.

John A. Shorter, Jr., Washington, D. C., for defendant Kember.

R. Kenneth Mundy, Washington, D. C., for defendant Budlong.

Charles F. C. Ruff, U. S. Atty., Carl S. Rauh, Robert W. Ogren, Raymond Banoun, Steven C. Tabackman, Asst. U. S. Attys., Washington, D. C., for United States.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This action is before the Court on the joint motion of the defendants Jane Kember and Morris Budlong for an order divesting the Court of jurisdiction.

### I. BACKGROUND

On August 15, 1978, a United States Grand Jury returned a twenty-eight count indictment against eleven individuals. Nine of the defendants were found guilty in a trial to the Court based on a stipulated record on October 26, 1979. The defendants Kember and Budlong were at that time in the process of being extradited from Great Britain. Because of their absence from this jurisdiction, on September 17, 1979, the Court granted the motion of the other nine defendants to sever Kember and Budlong from the case. The defendants Kember and Budlong were named in twenty-four of the twenty-eight counts in the indictment. They were charged by the Grand Jury with conspiracy to illegally obtain government documents in violation of 18 U.S.C. § 371, conspiracy to obstruct justice also in violation of 18 U.S.C. § 371, illegal interception of wire or oral communication in violation of 18 U.S.C. § 2511(1)(a), ten counts of theft of government property in violation of 18 U.S.C. § 641, obstruction of justice in violation of 18 U.S.C. § 1503, and ten counts of second degree burglary in violation of 22 D.C.Code § 1801(b).

After the return of the indictment, a United States Magistrate issued arrest warrants for Kember and Budlong who resided in England. Then the United States began extradition proceedings in the United Kingdom for the return of these defendants to face the charges against them. The United States sought extradition on all of the charges against the defendants. The British Government, however, concluded that only the obstruction of justice count and the ten second degree burglary counts constituted extraditable offenses under the An-

glo-American Extradition Treaty. Following hearings, the Bow Street Stipendiary Magistrate ordered both defendants extradited to the United States for trial solely on the burglary counts in the indictment. Extradition was denied on the obstruction of justice count.

It is the defendants' contention that because they can be tried only on the burglary counts, which charge violations of the District of Columbia Code, this Court lacks jurisdiction over this case.

## II. SECTION 502 OF TITLE 11 OF THE DISTRICT OF COLUMBIA CODE

The issue before the Court is controlled by section 502 of the District of Columbia Code Title 11. As the Supreme Court of the United States has often stated, a question of statutory construction should begin with an examination of the language of the statute itself. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979); *Teamsters v. Daniel*, 439 U.S. 551, 564, 99 S.Ct. 790, 799, 58 L.Ed.2d 808 (1979); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977); *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 24, 97 S.Ct. 926, 940, 51 L.Ed.2d 124 (1977); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

Section 502 of Title 11 of the District of Columbia Code provides:

> In addition to its jurisdiction as a United States district court and any other jurisdiction conferred on it by law, the United States District Court for the District of Columbia has jurisdiction of the following:
>
> .    .    .    .    .
>
> (3) Any offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense.

The indictment in this case joins offenses under the District of Columbia Code and the United States Code against both defendants. Thus, under the plain language of section 502, this Court would have jurisdiction to try this case.

In an attempt to avoid the plain language of section 502, defense counsel rely on *United States v. Jackson*, 562 F.2d 789 (D.C.Cir. 1977), and *United States v. Shepard*, 515 F.2d 1324 (D.C.Cir.1975).

In the *Shepard* case, the appellant was indicted on one United States Code count and three counts under the District of Columbia Code. *Id.* at 1326–27. Prior to submitting the case to the jury, the Government elected to dismiss the United States Code count because of a variance between the proof and that charge in the indictment. *Id.* at 1328. The appellant argued that the District Court's jurisdiction over the D.C. Code offenses lapsed upon the dismissal of the federal count in the indictment. *Id.* at 1328. The Court of Appeals rejected this contention and held that where federal and local offenses have been properly joined in one indictment and jeopardy has attached, the District Court may proceed to a determination of the local offenses regardless of any intervening disposition of the federal counts. *Id.* at 1331.

The Court of Appeals faced this issue for the second and only other time in *United States v. Jackson*, 562 F.2d 789 (D.C.Cir. 1977). In *Jackson*, the two appellants were charged in a nine-count indictment with two United States Code counts and seven District of Columbia Code counts. *Id.* at 792. The District Judge granted a motion to sever one of the D.C. counts from the rest of the case. *Id.* at 792 & n.1. Both of the appellants were convicted in a trial before the District Court on the D.C. count. *Id.* at 792. The Court of Appeals reversed these convictions on the D.C. count on the ground that the District Court lost its jurisdiction upon the granting of the severance. *Id.* at 797.

According to the Court of Appeals in *Jackson*, the word "joined" in section 502(3) must be construed to mean "properly joined

under Federal Rule of Criminal Procedure 8." *Id.* at 793. In *Jackson,* the court held that the joinder of the D.C. count with the rest of the indictment was improper. *Id.* at 797. Thus, the D.C.Code charge was not "joined" with the federal charges in the indictment in the meaning of section 502, and the District Court lacked jurisdiction over the D.C. count. *Id.*

As an alternative holding, the Court of Appeals in *Jackson* held that even if the D.C. and federal charges were properly joined within the meaning of Rule 8, the District Court loses jurisdiction over the local offense if it grants a severance of that charge pursuant to Rule 14 of the Federal Rules of Criminal Procedure. *Id.* at 798–800. Whereas Rule 8 permits the joinder of certain defendants and certain offenses if the charges involve the same series of acts or transactions, Rule 14 provides relief from prejudicial joinder. Therefore, the joinder mentioned in section 502(3) must be neither improper under Rule 8 nor prejudicial under Rule 14.

The joinder in the present indictment is proper under Rule 8 and is not prejudicial within the meaning of Rule 14. This Court ruled on this exact issue in the proceedings against the other nine defendants named in the indictment. *United States v. Hubbard,* 474 F.Supp. 64, 86–90 (D.D.C.1979). Thus, the offenses in the indictment in this case are "joined" within the meaning of section 502(3) as that term has been interpreted by the Court of Appeals in *Shepard* and *Jackson* : the charges are properly joined within the meaning of Rule 8 and are not prejudicially joined within the meaning of Rule 14. Therefore, *Shepard* and *Jackson* do not eliminate this Court's jurisdiction over this case.

The fact remains that treaty provisions will prevent the defendants from being tried on any counts but those charged under the D.C.Code. However, this fact alone does not strip this Court of jurisdiction. The panels in *Shepard* and *Jackson* both indicated that the doctrine of pendent jurisdiction, if applied with great care, could be imported from the civil law into the criminal law to aid in the interpretation of section 502(3). *United States v. Jackson,* 562 F.2d 799; *United States v. Shepard,* 515 F.2d at 1330. The Court of Appeals focused on two interests which may be considered in determining the propriety of the retention of jurisdiction under section 502(3).

First, the court indicated that the extent to which the case implicates federal law may influence the determination. If any case implicates federal law, this case does it. The ten burglaries upon which the defendants Kember and Budlong can be tried are charged as part of conspiracies against the United States. In addition, the burglary counts themselves charge that they were committed with the intent to steal property of the United States Government.

Second, the court indicated that the extent of judicial energies expanded on the case are relevant. In this case, the Court has spent virtually all of its energy during the past year on the pending indictment. Numerous issues which arose with respect to the other nine defendants will most likely arise again.

Accordingly, the Court holds that where substantial judicial energies would be wasted, and a case implicates federal concerns, the District Court is not ousted of its jurisdiction by the fact that a treaty prevents the prosecution of the United States Code offenses in an indictment in which District of Columbia Code offenses and federal offenses are "joined" within the meaning of section 502(3) as that term has been interpreted in the *Shepard* and *Jackson* cases.

An Order in accordance with this Memorandum Opinion shall be issued of even date herewith.